**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TD Professional Services, | No. CV-22-00018-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Truyo Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for a Protective Order. (Doc. 53). The Motion has been fully briefed (Docs. 53, 55, 56), and the Court now rules.

**I.   BACKGROUND**

On June 15, 2022, the Court held a scheduling conference to identify the deadlines that will govern this case. The parties disputed whether discovery should be bifurcated into claim construction and post-claim construction phases and whether Plaintiff should be allowed access to Defendants' allegedly infringing product (the "Truyo Platform") prior to claim construction. The Court ordered the parties to file supplemental briefing on these issues (Docs. 48, 49), ultimately bifurcating discovery into two phases and allowing Plaintiff one month to access the Truyo Platform prior to claim construction. (Doc 51 at 1–2). The Court also set a deadline for the parties to file a joint stipulated protective order by July 8, 2022. (*Id.* at 4). On July 8, 2022, Defendant filed a Motion for a Protective Order outlining several contested issues pertaining to the protective order. (Doc. 53).

## II. LEGAL ANALYSIS

### A. Attorneys' Eyes Only Designation

The parties appear to have mostly settled on an acceptable definition for material that will be designated as Attorneys' Eyes Only (AEO), as noted in Exhibit C to Defendants' Reply. (Doc. 56-3 at 4). However, there are two outstanding issues for the Court to resolve.

First, Plaintiff seeks to change Defendants' proposed language defining the scope of AEO material from "includes but is not limited to" to "consists of." (Doc. 55 at 2–3). Plaintiff argues that Defendants' proposed language impermissibly expands the definition of AEO such that Defendants will be able to use the AEO designation on any documents regardless of their content. (*Id.* at 3). In response, Defendants agree to accept Plaintiff's "consists of" language and other edits to the AEO definition, "so long as Defendants' acceptance of Plaintiff's edits are not deemed an admission that any items deleted from the section are not AEO," such as the deleted category of "planned commercial products." (Doc. 56 at 3). In Defendants' view, even though planned commercial products would be removed from the definition of AEO material, to the extent that such products also include trade secrets or other categories of information subject to an AEO designation, Defendant should still be able to designate those as AEO materials. (*Id.* at 3). The Court agrees that the proposed protective order allows for a document containing both non-AEO material and AEO material to be designated as containing AEO material and accepts this proposed change to limit the scope and definition of AEO material to the necessary categories agreed on by the parties.

Next, the parties dispute whether "any other sales and profit information" is properly considered AEO material. Federal Rule of Civil Procedure 26(c) permits the Court to issue protective orders "for good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" during the discovery process. Fed. R. Civ. P. 26(c)(1). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no

protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

Plaintiff argues that Defendants' sales and profit information should only be classified as confidential, not AEO, because Plaintiff's counsel needs to be able to share Defendants' revenue from sales of the allegedly infringing product with Plaintiff to formulate Plaintiff's damages theories. (Doc. 55 at 6). Defendants maintain that "detailed sales and profit information about specific Truyo customers is highly sensitive information [] and is not necessary for strategic purposes" related to Plaintiff's damages theories. (Doc. 56 at 3–4). Defendants offer compromise language limiting the AEO designation to "any other customer-specific sales or profit information." (*Id.* at 4). The Court agrees that Defendants' revised language strikes an appropriate balance between Plaintiff's counsel's need to discuss damages theories with Plaintiff while also safeguarding Defendants' proprietary sales data and related information. "The Court notes that, 'even with the best intentions,' Plaintiffs may not be able 'to avoid even the subconscious use of confidential information revealed through discovery.'" *Adlerstein v. United States Customs & Border Prot.*, No. CIV 19-500-TUC-CKJ, 2021 WL 6133955, at *3, n. 1 (D. Ariz. Dec. 20, 2021) (quoting *TVIIM, LLC v. McAfee, Inc.*, No. 13-CV-04545-VC (KAW), 2014 WL 2768641, at *2 (N.D. Cal. June 18, 2014). The proposed language would provide Plaintiff's counsel with access to the customer-specific sales and profit information but would restrict dissemination of that highly sensitive information to Plaintiff while still allowing Plaintiff and its counsel to discuss Defendants' high-level sales and profit information to make its damages case. Including Defendants' customer sales data as AEO material "will act to reduce any harm to Defendants' interests in not allowing wide-spread dissemination of sensitive information." *Adlerstein*, 2021 WL 6133955, at *4.

In sum, the Court finds Defendants' position reasonable and accepts the parties' edits regarding the definition of AEO material.

### B. Source Code Inspection Prior to Claim Construction

Within the context of Defendants' Motion for Protective Order, the parties appear

to argue over whether the source code underlying Defendants' Truyo Platform should be made available for inspection alongside the platform as part of the limited pre-claim construction discovery. Defendants argue that access to the source code is unnecessary at the claim construction stage if Defendants' Truyo Platform is made available, while Plaintiff argues that the Court's June 28, 2022, Scheduling Order clearly contemplates inspection of the source code because Defendants mentioned source code inspection and its burden on Defendants in their supplemental briefing. (Doc. 49 at 7–8). Plaintiff's briefing on the issue did not address source code inspection and only requested access to the Truyo Platform itself. (Doc. 49).

This Court's June 28, 2022, Order states that Plaintiff be allowed to access the Truyo Platform prior to claim construction. (Doc. 51 at 1–4). That Order does not explicitly address whether Plaintiff's inspection of the Truyo Platform prior to claim construction includes source code inspection. As noted by Defendants, a software platform's source code is routinely excluded from the finished software product, which is made up of machine-readable object code derived from the source code. (Doc. 56 at 9); *Source Code*, *Oxford Dictionary*, Mar. 2003 ("a code written in a high-level or assembly language, which is converted into object code by a compiler, assembler, or interpreter; a program in a source language"). Defendants aver that the underlying source code is not a component of the Truyo Platform that is provided to its customers, nor is source code review required to examine the Truyo Platform's architectural functions. (Doc. 56 at 9–10). Defendants also agree that with the Truyo Platform inspection, Defendants will provide Plaintiff with "a system architecture diagram of the Truyo Product and a RESTful API Guide" that are provided to all customers along with access to the software. (Doc. 56 at 10–11).

In the interests of efficiency, the Court clarifies that Plaintiff's pre-claim construction access to the Truyo Platform does not include a source code inspection. The purpose of bifurcating discovery in this action is to expedite claim construction discovery and minimize the associated cost and burden to the parties. Production of source code at this stage will heavily increase both parties' burden and expenditures at this stage and is

not proportional to Plaintiff's present need to narrow claim construction to the claims at issue in this action. *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987) ("Where proof of either relevance or need is not established, discovery is properly denied."). This is especially true here because Plaintiff's asserted patents do not express the invention in terms of source code, but instead claim the invention with reference to computing system architecture and its related functionality. At this stage, "[e]xamining source code is not the only means to determining functionality," where the Plaintiff has yet to analyze the Truyo Platform and related technical documents. *3rd Eye Surveillance, LLC v. United States*, 143 Fed. Cl. 103, 111 (2019).

### C. Source Code Inspection After Claim Construction

The Court notes that inspection of Defendants' source code may become relevant and proportional to the needs of the case after claim construction. *See MVS Studio Inc. v. Bingo Bean, LLC*, No. CV 10-07675 JHN SSX, 2011 WL 10538669, at *2 (C.D. Cal. June 24, 2011) ("Plaintiffs are entitled to access information that is relevant to proving or disproving their allegations.... This generally includes the disclosure of raw data (source code, schematics, formulas, etc.) sufficient to show the operation of the accused aspects of the products in order to allow the patentee to make it's [sic] own determinations as to infringement.") As such, including source code inspection provisions in the Protective Order now will expedite that future process should it be needed.

#### 1. Availability of Source Code Inspection

To the extent that the parties seek an advance ruling on whether source code production and inspection will be made available in this case after claim construction, the Court declines to do so. The Court instead directs the parties to comply with the discovery dispute provisions laid out in the Scheduling Order after appropriate discovery requests and corresponding objections have been served, should the parties be unable to agree on what will be produced at the time such discovery is propounded.

The Court also finds that Defendants' proposed additions to the AEO source code provisions stating "[t]o the extent the production or disclosure of computer source code

becomes necessary in this case" and "[f]or the avoidance of doubt, nothing in this Order should be construed as a determination of whether the production or disclosure of computer source code is or is not necessary in this case" are unnecessary. (*See* Doc. 56-3 at 4–5). The Court also rejects Defendants' addition of "If Source Code Material is needed" in Section 5(d)(iv) for the same reason. (*Id.* at 8).

### 2. Source Code Definition

The parties dispute the definition of source code in the protective order. Defendant's proposed protective order defines "Source Code Material" as:

> Information that includes computer source code, object code, application programming interface ("API"), programming comments, or other extremely sensitive Information that describes in detail the algorithms or structure of software or hardware designs and/or live data (that is, data as it exists residing in a database or databases).

(Doc. 56-1 at 4). Plaintiff argues that this definition is so broad that "the term encompasses practically their entire software system," but Plaintiff does not otherwise suggest revisions to the source code definition. (Doc. 55 at 3). Defendants' Reply does not address Plaintiff's objections to the source code definition. (*See.* Doc. 56).

The Court has reviewed model protective orders from other jurisdictions containing source code definitions and does not find Defendants' proposed definition to be any broader than necessary to cover Defendants' proprietary software code absent specific objections from Plaintiff.[1] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)

---

[1] Indeed, Defendants' proposed source code definition largely tracks the model protective order for software patent litigation adopted by the Northern District of California. Section 2.9 of that model protective order reads:

> "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

*See Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential*

("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."); *see World Champ Tech LLC v. Peloton Interactive, Inc.*, No. 21-cv-03202-SBA (KAW), 2022 WL 2159260, at *1 (N.D. Cal. Jun. 15, 2022) (approving use of the model protective order provisions for source code); *see also Kelora Sys., LLC v. Target Corp.*, No. C 10-04947 CW LB, 2011 WL 6000759, at *2 (N.D. Cal. Aug. 29, 2011) ("[T]he court treats the model protective order as setting forth presumptively reasonable conditions regarding the treatment of highly confidential information.")

### 3. Procedures for Source Code Inspection

The parties identify three disputes related to the source code inspection provisions: (1) computer specifications; (2) metadata; and (3) Plaintiff's addition of specific categories of information to be produced along with source code material.[2] (Doc. 55 at 4–5; Doc. 56 at 4–7).

#### i. Computer Specifications

Defendant's Motion seeks to include a set of detailed procedures to govern Plaintiff's expert's inspection of Defendants' source code, including the use of a single, stand-alone computer without access to any network, located at Defendants' office or that of their counsel. (Doc. 53-1 at 7). Plaintiff's Response seeks an entirely different set of procedures that it claims are required for its experts to conduct their analysis, including the use of two computers connected to a local area network (LAN), with the ability to insert a thumb drive to install expert analysis tools. (Doc. 55-1 at 15). Defendants' Reply offers another proposal for source code inspection as follows:

> Defendants propose the use of a third-party software escrow company that can load industry-standard, commercially available source code analysis tools that Plaintiff's experts may

---

*Information and/or Trade Secrets*, U.S. District Court, Northern District of California, https://www.cand.uscourts.gov/forms/model-protective-orders/ (last visited Aug. 3, 2022).
[2] The parties' briefing also identified additional differences in earlier versions of the protective order, such as the number of allowed experts and use of the source code in expert reports, but Defendants' revised protective order accepts those changes so the Court will not address them herein. (*See* Doc. 56-3 at 8–9).

- 7 -

>require on the stand-alone computer to ensure that the source code remains safeguarded. To the extent Plaintiff's expert requires additional help reviewing the source code (such as the use of multiple reviewing experts and/or a second, stand-alone computer with another copy of the source code), Plaintiff must bear the cost of any such additional accommodations. This includes any costs of having additional third-party personnel to observe Plaintiff's expert's use of the second computer, and any additional time and resources needed to load industry-standard, commercially available source code analysis tools on the second computer.

(Doc. 56 at 5).

Various jurisdictions have differing default processes for source code inspection. For example, the District of Delaware developed a Default Standard for Access to Source Code that applies absent an agreement among parties. *See Default Standard for Access to Source Code*, U.S. District Court, District of Delaware, https://www.ded.uscourts.gov/default-standard-discovery (last visited Aug. 3, 2022). Delaware's default provisions limit a receiving party's source code access to a single electronic copy of the code on a password protected, stand-alone computer located at an independent escrow agency. *Id.* The stand-alone computer contemplated must be equipped with software programs that would allow the party's experts to view, search, and analyze the source code. *Id.* As another example, the model source code provisions adopted by the U.S. International Trade Commission for its Administrative Protective Order contemplates the use of two stand-alone password protected computers. *Source Code Provision to be inserted in Model Commission APO*, U.S. Int'l Trade Commission, https://www.usitc.gov/press_room/documents/featured_news/Ediscovery_attachment1.pdf (last visited Aug. 3, 2022).

As another example, Section 9(d) of the Model Protective Order for software patent litigation from the Northern District of California provides:

>Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at

> other mutually agreeable times, at an office of the Producing Party's counsel or another mutually agreed upon location. The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.

*Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets*, U.S. District Court, Northern District of California, https://www.cand.uscourts.gov/forms/model-protective-orders/ (last visited Aug. 3, 2022).

Because Defendants' proposed use of an independent escrow agency and a single stand-alone computer without network access or electronic recording capabilities is in line with standard practices approved for use in other jurisdictions, as discussed above, and strikes a balance between the Plaintiff's need for access to the source code and Defendant's risk of the disclosure of highly personal information, the Court adopts it. "[I]t is well recognized [] that source code requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property." *See Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016). Plaintiff has not stated a compelling reason for its purported need to connect multiple source code analysis computers to a LAN or downloadable thumb drive and the Court notes that such procedures appear to be uncommon and impose inherent risks to the security of Defendants' proprietary computer code. To the extent Plaintiff does need to use two computers to conduct its expert analysis, Defendants' proposed language reasonably provides that Plaintiff will bear those costs.

Defendants further assert that the parties dispute the extent to which Plaintiff's experts can make copies or electronically store Defendants' source code during analysis. (Doc. 56 at 5–6). However, Plaintiff made no edits to Defendants' proposed Section 5(d)(viii) that lays out Plaintiff's ability to make reasonable copies of source code excerpts. (Doc. 55-1 at 17). Instead, Defendants' revised protective order submitted with their Reply seeks to insert language to that section requiring Plaintiff's counsel and experts to request

copies of the source code from Defendants' in lieu of being able to print the copies themselves. (Doc. 56-2 at 9). Defendants' proposed revisions inserting a request and approval process for copies are not responsive to Plaintiff's objections and are without adequate explanation. Therefore, the Court declines to adopt them where the originally proposed provisions in Defendants' proposed protective order appear reasonable and less burdensome on both parties.

### ii.      Metadata

The parties dispute whether the source code production and inspection should include "all metadata" associated with the source code. Plaintiff summarily states that "Source Code Material will need to include all metadata." (Doc. 55 at 4). Defendants argue that such a request is ambiguous because it is unclear what would be included, but are willing to agree to Plaintiff's request for "all metadata" if the protective order also includes the caveat "to the extent it exists or is maintained." (Doc. 56 at 6–7). The Court does not find Defendants' added language helpful to clarify any alleged ambiguity in what is meant by "all metadata."

Moreover, it is canonical that a party is only required to produce material that is within their possession, custody, and control—Defendants would not be required to recreate or produce metadata for its source code that does not otherwise exist. *Lipsey v. Depovic*, No. 1:18-cv-00767-NONE-HBK, 2022 WL 36817, at *1 (E.D. Cal. Jan. 3, 2022) ("A party may request documents in another party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1)."). Therefore, the Court accepts Plaintiff's request to include source code metadata in any future source code inspection or production but rejects Defendants' proposed edit "to the extent it exists or is maintained."

### iii.      Plaintiff's Delineated Production Requirements

In Plaintiff's revisions to Defendants' proposed protective order, Plaintiff added the following language to the source code inspection requirements:

> The Producing Party's production shall not be limited to, but shall also include, the following: access to file server activity logs including cloud based servers and virtual machines that

>contain records of file creation and deletion as well as user permissions activity for the lifetime of the software engineering process of the GDPREdge/Truyo platform. Access to source control systems and project management systems such as Jira, Azure DevOps, and GitHub for the full lifetime of the software engineering process of the GDPREdge/Truyo platform; and, Access to production management documentation detailing designs and architectures of the GDPREdge/Truyo platform for the lifetime of the development of the platform.

(Doc. 55-1 at 15–16). Plaintiff argues that it seeks access to this information "in order to test a key claim Defendants made in this case: that Defendants abandoned Plaintiff's technology early on and switched to wholly different technology." (Doc 55 at 4). Defendants argue that Plaintiff's proposed addition is an impermissible attempt to get around the discovery requirements of Federal Rule of Civil Procedure 34 and this Court's discovery limits set forth in its June 28, 2022, Scheduling Order. (Doc. 56 at 6). The Court tends to agree with Defendants that such a specific delineation of documents and data to be produced is inappropriate for inclusion in the protective order and better suited for a request for production. *See Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 622–23 (9th Cir. 1999) (citations omitted) (the purpose of a protective order is "to prevent harm by limiting disclosure of relevant and necessary information"). The Court reminds Plaintiff that the current phase of discovery is limited to claim construction issues and Plaintiff's review of the Truyo Platform. (*See* Doc. 51 at 1–4). Plaintiff has not provided a compelling reason for the Court to find that the requested documents and information encompass current functional aspects of the Truyo Platform or information that will simplify claim construction.

Therefore, the Court rejects Plaintiff's proposed revision, as outlined above, in its entirety. The Court makes no advance judgment, however, on the relevance or discoverability of the categories of information contained in Plaintiff's proposed revision in later phases of discovery.

### D. Plaintiff's Independent Expert Selection

The parties dispute who can serve as an independent expert and whether Defendants should have approval rights over disclosure of protected material to Plaintiff's experts.

Defendants seek to limit the definition of "Independent Expert" in the protective order to exclude (i) a current or former employee of Plaintiff; (ii) a competitor of Defendants "offering or planning to offer products or services which address data privacy compliance"; and (iii) anyone associated with someone that falls under categories (i) or (ii). (Doc. 53-3 at 8–9). Defendants also seek to require Plaintiff to provide its proposed experts' CVs to Defendants for approval before those experts gain access to any material designated as source code. (*Id.* at 9). Defendants argue that the intent of this provision is "to ensure that confidential information is only provided to an independent expert and not to a relative, friend or other third-party proxy of Mr. Hines or TD." (Doc. 53 at 7).

Plaintiff argues that it should have an unlimited right to choose its own experts and instead proposes that the definition of independent expert be modified to allow Defendants' competitors and the related associates of Plaintiff's current and former employees to serve as experts. (Doc. 55 at 5; Doc. 55-1 at 18). Plaintiff's proposed revisions also completely remove the disclosure approval section. Plaintiff argues that such procedures would amount to a broad expert disclosure that is not required at this stage of the case and would place the burden on Plaintiff to seek a court order should the parties disagree on Plaintiff's chosen expert. (Doc. 55 at 5).

In Reply, Defendants reiterate that the information to be disclosed to Plaintiff's experts constitutes highly sensitive, confidential information that belongs to Defendants and would be put at risk if it was shared with associates of Plaintiff's employees or Defendants' competitors. (Doc. 56 at 7). Defendants' proposed protective order includes dispute resolution provisions by which Defendants can challenge Plaintiff's experts and Plaintiff can seek relief from the Court if the parties fail to agree on a disclosure to an expert. (Doc. 53-3 at 9). Defendants agree to shift the burden of persuasion on whether disclosure to a given expert is appropriate to the objecting party. (Doc. 56 at 7–8).

"Courts commonly issue protective orders limiting access to sensitive information to counsel and their experts." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007). The well-known purpose of a protective order is "to prevent harm by limiting disclosure of relevant and necessary information." *Cacique*, 169 F.3d at 622–23 (citations omitted). The very purpose of protective orders would be in jeopardy, then, if the Court were to allow Plaintiff to employ Defendants' competitors or Plaintiff's closely related associates to access Defendants' highly sensitive and confidential business information. Courts have recognized that "[i]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (quotations omitted). The Court also notes that both the District of Delaware's Standard Default provisions and the Northern District of California's Model Protective Order for software patent litigation contemplate a producing party's expert approval rights where an expert will access AEO material or source code. *See Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets*, § 7.4(a)(2), U.S. District Court, Northern District of California, https://www.cand.uscourts.gov/forms/model-protective-orders/ (last visited Aug. 3, 2022); *see also Default Standard for Access to Source Code*, § 4, U.S. District Court, District of Delaware, https://www.ded.uscourts.gov/default-standard-discovery (last visited Aug. 3, 2022).

Accordingly, the Court finds that limiting Plaintiff's independent experts to persons that are not affiliated with Plaintiff or one of Defendants' competitors is a reasonable restriction on Plaintiff's access to Defendants' protected material. *Corley v. Google, Inc.*, No. 16-cv-00473-LHK (HRL), 2016 WL 3421402, at *2 (N.D. Cal. June 22, 2016) (noting an "unnecessary risk of competitive harm if the court permitted Plaintiffs to hire the former employees of [Defendant's] competitors as experts."); *see also Olin v. Facebook, Inc.*, No. 18-cv-01881-RS (TSH), 2019 WL 5802020, at *2 (N.D. Cal. Nov. 7, 2019) (citing *Corley* approvingly); *see also TVIIM*, 2014 WL 2768641, at *2 (noting that the Northern District

of California "clearly requires that an 'expert' under the Protective Order may not be a 'past or current employee of a Party or a Party's competitor.'").

The Court further finds that allowing Defendants a limited right to prevent experts that are closely affiliated with Plaintiff or Defendants' competitors from accessing its confidential information is a reasonable restriction considering the sensitive nature of the material to be disclosed. Providing its experts' CVs to Defendants to ascertain affiliation with a competitor would have minimal burden on Plaintiff while affording Defendants certainty that their source code and other proprietary material remains secure. Indeed, the proposed provisions do not give Defendants the right to choose or outright reject Plaintiff's experts, but "merely provide[] an opportunity for the objecting party to seek an order from the Court precluding the disclosure of [source code material] to a particular witness." *Bethesda Management Co. v. Bernstein Management Corp.*, 2015 WL 13667752, at *2 (D. D.C. Feb. 23, 2015). However, for the avoidance of doubt, the Court adds the following provision to Section 5(e): "The Producing Party's basis for objecting to a disclosure to a Receiving Party's Independent Expert shall be limited to an objection that the proposed expert does not meet the requirements of this section."

### E.     Expert Acknowledgement

Defendant proposes a confidentiality acknowledgment and agreement to be bound by the terms of the protective order for Plaintiff's experts that includes specific references to various sections of the protective order, including the AEO and source code designation provisions and an agreement not to use any of the protected information to compete with Defendants. (Doc. 56-3 at 25–26). Plaintiff agrees to the inclusion of an acknowledgment, but objects to the use of the specific section references and instead proposes a high-level agreement to be bound "[f]or purposes of simplicity and clarity." (Doc. 55 at 6–7). The Court has reviewed both parties' proposed language and finds that Defendants' reference to important sections of the protective order does not render the acknowledgement confusing or inappropriately complex given the highly sensitive nature of the information that will be disclosed under the protective order. Thus, the Court accepts Defendants'

proposed Exhibit A to the protective order. (Doc. 56-3 at 25–26).

### F. Plaintiff's Non-Substantive Changes

Finally, Plaintiff proposes changes at page 2, lines 11-14 and page 7, lines 16-17 for clarity. (Doc. 55 at 7).

Regarding Plaintiff's changes at page 2, lines 11-14, Defendants do not address these proposed changes in their reply but appear to have accepted these proposed changes in their revised proposed protective order filed at Doc. 56-3. Accordingly, the Court accepts these changes.

Regarding Plaintiff proposes changes at page 7, lines 16-17, these edits are related to the description of the computers used during Plaintiff's source code inspection. Thus, the Court rejects these changes to the extent they are inconsistent with the procedures outlined by the Court above.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED THAT** Defendants' Motion for a Protective Order is granted as discussed in this Order. With the filing of this Order, the Court will enter a protective order as set forth herein.

**IT IS FURTHER ORDERED THAT** the parties submit an updated joint protective order within seven days of this Order, including the agreed-to provisions as discussed in the parties' briefing and those outlined in this Order. The parties are directed to include a redline identifying the changes as compared to Defendants' original proposed protective order filed at Doc. 53-3.

**IT IS FURTHER ORDERED THAT** the one-month period for Plaintiff to access Defendants' allegedly infringing product now ends on September 2, 2022.

///

///

///

///

**IT IS FURTHER ORDERED THAT** the deadline for Plaintiff to serve its infringement contentions on Defendants is moved to September 9, 2022. No other deadlines in the Scheduling Order are affected.

Dated this 4th day of August, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge